UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENNIS DEAN COOPER,

                Plaintiff,

v.                              Case No. 3:17-cv-1316-J-34JRK

DEPARTMENT OF CORRECTIONS,
et al.,

                Defendants.
_____

## **ORDER OF DISMISSAL WITHOUT PREJUDICE**

Plaintiff Dennis Dean Cooper, an inmate of the Florida penal system, initiated this action on November 21, 2017, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1). In the Complaint, Cooper names the following Defendants: (1) the Florida Department of Corrections (FDOC); (2) Corizon, Inc. (Corizon); (3) Dr. L. Melendez, M.D.; (4) Dr. J. Aviles, M.D.; (5) Dr. R. LaFontant, M.D.; and (6) Centurion of Florida, LLC (Centurion). He asserts that the Defendants violated his federal constitutional rights when they failed to provide timely and proper medical care for his thyroid and heart ailments. As relief, he seeks compensatory and punitive damages. He also requests that the Court appoint counsel to assist him and direct the FDOC to replace his damaged heart. See Complaint at 19.

The Prison Litigation Reform Act requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Additionally, the Court must read Plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972).

"A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Central State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). A complaint filed in forma pauperis which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under

2

the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman, 739 F.2d 553, 556-57 (11th Cir. 1984). As such, "'conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.'" Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted). In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, Plaintiff cannot sustain a cause of action against the Defendants.

To the extent Cooper asserts any claims against the FDOC, state and governmental entities that are considered "arms of the state" are not "persons" subject to liability for purposes of §

1983 action. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see Mellen v. Florida, No. 3:13-cv-1233-J-34PDB, 2014 WL 5093885, at *7 (M.D. Fla. Oct. 9, 2014) (unpublished). The FDOC is an arm of the executive branch of state government, see Fla. Stat. § 20.315, and thus is not a person for purposes of § 1983 litigation. Therefore, the FDOC is not a person subject to liability under § 1983.

Cooper describes the FDOC's provision of medical care for his thyroid and heart ailments during a seven-month period from August 2013 through March 2014. See Complaint at 4-18. Cooper asserts that his August 1, 2013 blood test results showed thyroid dysfunction, which started his "ordeal." Id. at 4, 5. In his Complaint, Cooper provides the following description of the events relating to his thyroid and heart ailments. On September 10, 2013, Dr. Rodriguez ordered that Cooper see an endocrinologist. Cooper saw Dr. Roura on October 2nd. Dr. Roura ordered radiation treatment on October 2nd and reordered the treatment on November 6th. Radiation treatment was administered on November 6th, and Cooper was given a ninety-day no-work pass. On December 30, 2013, Cooper saw Dr. Melendez in the urgent care clinic, at which time Dr. Melendez noted Cooper's hormonal imbalance, and decreased his medication. However, Dr. Melendez neither prescribed additional medication nor sent Cooper for a follow-up appointment with an endocrinologist. On or about January 25-26, 2014, Cooper declared a medical emergency due to

rapid heart beats and shortness of breath. The electrocardiogram (EKG) results were abnormal, and blood work was ordered. Dr. Aviles examined Cooper on January 28, 2014. He noted Cooper's hyperthyroidism, and changed his medications. On or about February 3-12, 2014, Dr. LaFontant noted the abnormal EKG results and hyperthyroidism and increased Cooper's medication. But, neither Dr. Aviles nor Dr. LaFontant referred Cooper to an endocrinologist. In mid-February, Drs. Aviles, Melendez, and LaFontant saw Cooper in the urgent care clinic at Union Correctional Institution (UCI), but "continued to do nothing." In mid-February, Cooper filed a grievance with an Assistant Warden and asked for help. On or about February 19-24, Dr. Roura corrected "his misdiagnosis," determined that the hormonal imbalance was hypothyroidism, not hyperthyroidism, and changed Cooper's medication. Cooper waited over three days for his new medication. When Cooper suffered cardiac arrest on February 24, 2014, medical providers at Memorial Medical Center in Jacksonville, Florida, implanted a defibrillator. Upon Cooper's March 7th discharge, Dr. Chang, a primary care physician, ordered a follow-up with an endocrinologist. Cooper asserts that UCI doctors continue to monitor his thyroid and heart ailments and change his medications. Nevertheless, he asserts that he does not trust UCI medical providers, and therefore wants a follow-up consultation with a qualified endocrinologist.

To the extent Cooper asserts that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, the Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[1] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[2] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S.Ct. at 2327.[3]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d

---

[1] Farmer v. Brennan, 511 U.S. 825 (1994).

[2] Hudson v. McMillian, 503 U.S. 1 (1992).

[3] Wilson v. Seiter, 501 U.S. 294 (1991).

1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351.

Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737 (setting forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245).

> In Estelle[4], the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately

---

[4] Estelle v. Gamble, 429 U.S. 97 (1976).

7

> indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott[5] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor,[6] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46. Cooper has not alleged facts sufficient to state a claim under the Eighth Amendment in that he has not shown that any named medical personnel was deliberately indifferent to his serious medical needs.

As to any complaints about the Defendants' negligent acts and unprofessional conduct in providing allegedly substandard medical care, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether

---

[5] McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

[6] Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

8

procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Even if Plaintiff's allegations might possibly suggest medical malpractice, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle, 429 U.S. at 106). Consequently, the allegedly negligent conduct of which Cooper complains does not rise to the level of a federal constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.

The United States Supreme Court has stated:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most[,] it is medical malpractice, and as such the proper forum is the state court . . . .

Estelle, 429 U.S. at 107; Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [defendant] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth

9

Amendment."). "Nor does a simple difference in medical opinion as to [Cooper's] diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

It appears that Cooper is suing Corizon and Centurion for alleged mismanagement of his medical care. Corizon and Centurion contracted with the FDOC to provide medical services to inmates within the state of Florida. Although Corizon and Centurion are not governmental entities, "[w]here a function which is traditionally the exclusive prerogative of the state ... is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed,

> "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); see Denham v. Corizon Health, Inc., Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at *3 n.1 (M.D. Fla. June 4, 2015) ("[W]hen a government function is performed by a private entity like Corizon, the private entity is treated as the functional equivalent of the

government for which it works.") (citation omitted), <u>aff'd</u> (11th Cir. Jan. 13, 2017).

Where a deliberate indifference medical claim is brought against an entity, such as Corizon or Centurion, based upon its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of <u>respondeat</u> <u>superior</u>. <u>Craig</u>, 643 F.3d at 1310 (quoting <u>Grech v. Clayton Cty., Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); <u>see</u> <u>Denno v. Sch. Bd. of Volusia Cty.</u>, 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] <u>itself</u> causes the constitutional violation at issue." <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 693-94 (1978).

In <u>Monell</u>, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). Under the

11

directives of Monell, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur, 475 U.S. at 483-84). A government

entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Corizon and Centurion's liability under § 1983 would be based on their functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Cooper must plead that an official policy or a custom or practice of Corizon and Centurion was the moving force behind the alleged federal constitutional violation.

Upon review, Cooper has neither identified an official Corizon/Centurion policy of deliberate indifference nor an unofficial Corizon/Centurion custom or practice that was "the moving force" behind any alleged constitutional violation. Corizon and Centurion cannot be held liable based on any alleged conduct of or decisions by their employees simply because they were working under contract for Corizon or Centurion to provide medical care to inmates incarcerated in the FDOC. Cooper's factual allegations relating solely to alleged individual failures in his medical care are simply insufficient to sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Corizon and Centurion had notice of violations and made a "conscious choice" to disregard them. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Thus, Cooper's § 1983 claims against Corizon and Centurion are due to be dismissed.

To the extent that Cooper is requesting that this Court direct the FDOC and/or the Inspector General's Office to investigate the alleged ongoing injustices, this Court does not have the authority to grant such relief. Nevertheless, as to Cooper's interest in addressing any ongoing violations, he may seek such relief by initiating a grievance pursuant to the prison's administrative grievance procedures. In doing so, he may also request an appointment or consultation with a health care provider or guidance

counselor to address any mental or physical health issues that may concern him. Although the grievance process does not permit an award of money damages, the grievance tribunal has the authority to take responsive action. See Booth v. Churner, 532 U.S. 731 (2001) (holding that prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process). Additionally, Cooper may contact his classification officer to inquire about any concerns he may have about his conditions of confinement, including any access to sick call and/or physicians, including specialists, to evaluate his medical needs.

In light of the foregoing, this case will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B), without prejudice to Cooper's right to refile his claim under 42 U.S.C. § 1983 with sufficient factual allegations to support a claim under § 1983 against the proper Defendants, if he elects to do so.[7] The Clerk of Court will be directed to provide a civil rights complaint form and Affidavit of Indigency form to Cooper. If Cooper chooses to refile a civil rights complaint in this Court to address any alleged

---

[7] Plaintiff should note that pro se litigants are subject to the same law and rules of court that govern other litigants who are represented by counsel. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). All filings with the Court must be made in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Florida.

federal constitutional violations relating to mistreatment, he must submit a fully completed civil rights complaint form with an original signature and must submit a copy of the form for each Defendant for service of process. Additionally, in completing the form, he must write legibly and comply with Local Rule 1.05(a). The Clerk will be directed to provide him a copy of the Local Rule. Moreover, Plaintiff must either pay the $400.00 filing fee or file a fully completed Affidavit of Indigency form.

Therefore, it is now

**ORDERED:**

1. This case is hereby **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to refile on the proper forms, if he elects to do so.

2. The Clerk of Court shall enter judgment dismissing this case without prejudice, terminating any pending motions, and closing the case.

3. The Clerk shall send a civil rights complaint form and an Affidavit of Indigency form to Plaintiff. If he elects to refile his claims, he may complete and submit the proper forms. Plaintiff should not place this case number on the forms. The Clerk will assign a separate case number if Plaintiff elects to refile his claims. In initiating such a case, Plaintiff should either file a fully completed Affidavit of Indigency (if he desires to proceed as

a pauper) or pay the $400.00 filing fee (if he does not desire to proceed as a pauper).

    4.    The Clerk shall provide Cooper with a copy of Local Rule 1.05.

    5.    The Clerk shall terminate any pending motions and close the case.

    **DONE AND ORDERED** at Jacksonville, Florida, this 12th day of December, 2017.

MARCIA MORALES HOWARD
United States District Judge

sc 12/11
c:
Dennis Dean Cooper, FDOC #046499

17